In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3415

VRENI BÜCHEL-RUEGSEGGER,
as the duly appointed personal
representative of the
ESTATE OF GEORG BÜCHEL,

*Plaintiff-Appellee,*

*v.*

JOHN G. BÜCHEL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 C 544—**Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED JUNE 5, 2009—DECIDED AUGUST 6, 2009

Before MANION, ROVNER, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Two days before the plaintiff
Vreni Büchel-Ruegsegger's husband died in Switzerland,
he transferred 200,000 Swiss francs to their son, John
Büchel, who lives in Wisconsin. A Swiss court con-
cluded that the husband's estate was entitled to 150,000
of those Swiss francs. When John refused to remit the

money, the plaintiff filed suit against him in federal court in Wisconsin. The district court concluded that the son's refusal to pay violated Wisconsin common law and ordered him to pay. John Büchel appeals. Because we conclude that the district court did not have subject-matter jurisdiction over this lawsuit, we vacate the lower court's decision and remand so that the court can dismiss the case without prejudice.

I.

In 1951, Vreni Büchel-Ruegsegger and Georg Büchel were married in Wisconsin, where they lived until the late 1980s. They had two children, John and Diane. In 1987, Vreni and Georg sold their single-family home in Hartland, Wisconsin, and bought a condominium in Waukesha, Wisconsin, which they later sold in 1990. They deposited the money from these sales in a bank account in Lichtenstein under Georg's name. Meanwhile, Vreni had moved to Switzerland in 1988 or 1989, Georg relocated there in August 1990, and at some time Diane also moved to Switzerland. Vreni, Georg, and Diane lived together in Thun, Switzerland, until Georg's death in June 2000. John lives with his family in Milwaukee, Wisconsin. According to the joint stipulation of facts signed by both parties, Georg was a citizen of the United States and Lichtenstein; Vreni is a citizen of the United States and Switzerland; and John is a citizen of the United States.

In early 2000, Georg began experiencing health problems and soon moved to a nursing home in Thun. In April 2000, Georg executed his final will, indicating his

intent that his estate be divided according to Swiss law, except for a gold tablecloth that he designated for John. However, on June 1, 2000, he ordered the bank in Lichtenstein to transfer 200,000 Swiss francs to John to be used for John's family. In particular, Georg specified that the money should be used to pay for the education of John's children, who were his only grandchildren. Two days later, on June 3, 2000, Georg died.

Vreni began investigating the transfer of the 200,000 Swiss francs in the fall of 2000. In August 2002, she filed a complaint with the circuit court in Thun, seeking appointment as personal representative to pursue a claim against John to rescind the gift of the francs. The Swiss circuit court appointed Vreni as personal representative and concluded that Vreni was entitled to 100,000 Swiss francs, and Diane was entitled to 50,000. John appealed the decision of the Thun circuit court to the Court of Appeals of Kantons Bern, which affirmed in 2004.

When Vreni's attorney attempted to collect the money from John, he replied that he did not intend to honor the Swiss court's determination. Vreni then sued John in federal court in Wisconsin claiming diversity jurisdiction. Vreni conceded in this action that the Swiss court did not have personal jurisdiction over John and hence the Swiss court could not enforce its judgment against him. However, Vreni alleged that John's refusal to comply with the Swiss court's judgment constituted conversion under Wisconsin state law and she sought the return of the 150,000 Swiss francs (approximately $117,886 at the time the complaint was filed in 2006). Vreni and John filed cross-motions for summary judgment. The

district court, applying Wisconsin common law, deter-mined that "[t]he lawfulness of John's possession of the 200,000 Swiss Francs depends upon the lawfulness of Georg's gift to John," and that issue in turn hinged on "whether Swiss or Wisconsin law governs the gift." The district court concluded that Swiss law should apply and, according to the Swiss courts, John's possession of the 200,000 Swiss francs was unlawful. Accordingly, the district court held that John had converted the funds under Wisconsin common law. A final judgment was entered from which John appeals.

II.

The parties dispute whether the district court properly held that John had converted Georg's money under the Wisconsin law of conversion. However, we must consider first the preliminary issue of jurisdiction. Even if the parties do not address the issue of subject-matter juris-diction, "we are bound to evaluate our own jurisdiction, as well as the jurisdiction of the court below, *sua sponte* if necessary." *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, 563 F.3d 276, 282 (7th Cir. 2009). This duty arises because federal courts "have only the power that is autho-rized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). When a lower federal court lacks jurisdiction to reach the merits, a court of appeals possesses "jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id*.

The overarching question here is whether the district court had subject-matter jurisdiction over this dispute. We conclude it did not. Vreni brought this suit under 28 U.S.C. § 1332(a)(2), which grants a federal district court original jurisdiction over claims between "citizens of a State and citizens or subjects of a foreign state." John is a United States citizen and a citizen of Wisconsin, while Vreni is a dual citizen of the United States and Switzerland.[1] This case thus raises the issue of whether a dual citizen of the United States and a foreign country may sue a United States citizen under § 1332(a)(2). We previously decided this issue in *Sadat v. Mertes*, 615 F.2d 1176, 1178 (7th Cir. 1980), in which a dual citizen of Egypt and the United States who was living in Egypt

---

[1] A preliminary issue is whether we should look to the citizenship of Vreni or Georg. Although Vreni is the plaintiff, she brought this suit as the personal representative of the estate of Georg. Vreni cites § 1332(c)(2), which states that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." By its terms, § 1332(c)(2) makes a personal representative a citizen only of the same "State" as the decedent. It does not indicate that a personal representative should be deemed a citizen of the same foreign country as the decedent. On the other hand, it is not clear why the personal representative would be considered a citizen of the same state as the decedent but not of the same country. However, it is unnecessary for us to resolve this issue here because both Vreni and Georg were dual citizens: Georg of the United States and Lichtenstein, Vreni of the United States and Switzerland. For the sake of clarity, we will refer to Vreni's citizenship, but our analysis applies equally to Georg.

sued two American citizens and their insurers for negligence arising out of a car accident. The defendants moved to dismiss, alleging a lack of subject-matter jurisdiction under § 1332(a)(1) because the dual citizen was not a citizen of any state, based on his Egyptian residence. *Id.* After the district court dismissed the suit, the dual citizen appealed, claiming that his domicile at the time the suit was filed was in Pennsylvania and, alternatively, that jurisdiction arose under § 1332(a)(2) because of his Egyptian citizenship. After concluding that § 1332(a)(1) did not provide jurisdiction, *Sadat* turned to the alienage provision in § 1332(a)(2). *Sadat* noted that provision "does not establish the federal courts as forums for all lawsuits with an international flavor." *Id. Sadat* argued that "the paramount consideration should be whether the purpose of alienage jurisdiction to avoid international discord would be served by recognizing the foreign citizenship of the dual national." *Id*. at 1186-87. We held that, when a dual citizen of the United States and a foreign country asserts the subject-matter jurisdiction of the federal courts under § 1332(a)(2), "only the American nationality of the dual citizen should be recognized." *Id*. at 1187.[2] Accord-

---

[2] *Sadat* discussed in *dicta* a hypothetical exception to this general rule in which a dual citizen whose "dominant nationality is that of a foreign country" might be considered a citizen of a foreign state under § 1332(a)(2). 615 F.2d at 1187. *Sadat* based this hypothetical exception on the RESTATEMENT (SECOND) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 171(c) (1965). However, *Sadat* did not endorse the "dominant national-

(continued...)

ingly, we concluded that § 1332(a)(2) did not provide subject-matter jurisdiction for the plaintiff's claim in *Sadat*. *Id*. at 1189.

Our holding in *Sadat* has since been favorably cited by several circuit and district courts.[3] The Fifth Circuit has explained the rationale behind this rule:

---

[2]  (...continued)
ity" test, but merely said that it would consider the possibility "arguendo." *Id*. Moreover, no circuit court since *Sadat* has adopted or considered this test.

However, we need not decide the vitality of the possible *Sadat* exception, because that exception would only apply if the dual citizen "has taken all reasonably practicable steps to avoid or terminate his status as a national of the [United States]." *Id*. Here, Vreni and Georg lived for ten years outside of the United States before Georg's death and never renounced their United States citizenship. Because they did not take "all reasonably practicable steps" to divest their United States citizenships, the possible exception in *Sadat* is inapplicable.

[3]  *See, e.g.*, *Frett-Smith v. Vanderpool*, 511 F.3d 396, 400 (3d Cir. 2008) (holding that "for purposes of diversity jurisdiction, only the American nationality of a dual national is recognized"); *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996); *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 711 (9th Cir. 1992); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991); *Oteng v. Golden Star Res., Ltd.*, 615 F. Supp. 2d 1228, 1235 (D. Colo. 2009); *Ayenu v. Chevy Chase Bank, F.S.B.*, 496 F. Supp. 2d 607, 610 (D. Md. 2007); *Falken Indus., Ltd. v. Johansen*, 360 F. Supp. 2d 208, 210 (D. Mass. 2005); *Las Vistas Villas, S.A. v. Petersen*, 778 F. Supp. 1202, 1204 (M.D. Fla. 1991), *aff'd*, 13 F.3d 409 (11th Cir. 1994).

> [T]he major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level, and alienage jurisdiction is also intended to allow foreign subjects to avoid real or perceived bias in the state courts—a justification that should not be available to the dual citizen who is an American.

*Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996). Accordingly, because Vreni was a dual citizen of the United States and a foreign country, only her United States citizenship is relevant for assessing whether jurisdiction arose under § 1332(a)(2). Under that statute, jurisdiction did not arise because both Vreni and John were United States citizens.

Because the district court did not possess jurisdiction under § 1332(a)(2), we must ascertain whether a different source of jurisdiction exists. The only other possible provision is § 1332(a)(1), which permits a district court to hear cases between "Citizens of different States." The Supreme Court has held that an American citizen who moves abroad is not a citizen of any state for purposes of § 1332(a)(1). *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *accord ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003). Because she lived in Switzerland when she filed her complaint, Vreni is not considered a citizen of any state. Accordingly, she cannot assert subject-matter jurisdiction under § 1332(a)(1). *See Frett-Smith v. Vanderpool*, 511 F.3d 396, 400 (3d Cir. 2008) (stating that "if [a dual citizen] was domiciled abroad at the time her Complaint was filed,

she would not be a citizen of any state and diversity jurisdiction under § 1332(a)(1) would also fail"). Because there is no other basis for jurisdiction, we must dismiss this suit.

### III.

Because Vreni and the decedent were United States citizens as well as citizens of foreign states, they are unable to invoke subject-matter jurisdiction as citizens of a foreign state under § 1332(a)(2). Moreover, because they were Americans living abroad, they are also unable to invoke subject-matter jurisdiction under § 1332(a)(1). Because no other basis for subject-matter jurisdiction exists, the district court did not have subject-matter jurisdiction over this case. The judgment of the district court is VACATED and this case is REMANDED with instructions for the district court to dismiss the suit without prejudice.