In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1484

SUSAN BLUE,

*Plaintiff-Appellee*,

*v.*

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL UNION 159,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09-cv-395-wmc—**William M. Conley**, *Chief Judge*.

ARGUED SEPTEMBER 20, 2011—DECIDED APRIL 2, 2012

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges*.

WOOD, *Circuit Judge.* In 2009, Susan Blue sued her former employer, International Brotherhood of Electrical Workers, Local 159 (IBEW), alleging retaliation for opposing the discrimination of an African-American electrician. The jury found in favor of Blue and awarded her $202,396.76 in damages. IBEW filed several post-trial motions with the district court, seeking a new

trial or relief from the judgment on the grounds that the district judge erred in admitting certain evidence and that the weight of the evidence favored IBEW. The district court denied IBEW's motions, and now IBEW appeals. Although, as we explain below, our jurisdiction on this appeal is limited, we find no error with the district court's decisions, and we therefore affirm.

**I**

For over 30 years, Blue was an administrative assistant at IBEW. There is ample evidence that Blue's work was excellent: Union members frequently relied on Blue for information on union benefits or obligations; her colleagues described her as professional, knowledgeable, and reliable; and at least one former supervisor described her job performance as "outstanding." During the events at issue in this case, Blue's supervisor at IBEW was Billy Harrelson, and until the contested period, there is no indication that Harrelson ever criticized or disciplined her.

In early 2006 Alexander Phillips filed a complaint of race discrimination against IBEW with the Madison Equal Opportunities Commission (MEOC). Phillips's complaint alleged that his information was removed from the IBEW referral book and his union initiation fee was returned to him because of his race (African-American). Blue learned of the complaint's contents after it was mailed to the IBEW office. Around the same time, Blue also discovered that Harrelson had allowed a white electrician to sign the referral book

without paying his initiation fee. Concerned about this disparity, Blue questioned Harrelson about the apparent discrimination.

Harrelson retaliated: Blue presented evidence that she was stripped of her essential job duties, denied overtime opportunities, and subjected to a hostile work environment. As Phillips's case at the MEOC progressed, Harrelson's harsh treatment of Blue intensified. The MEOC mailed several questionnaires to IBEW to be filled out by selected workers, including Blue. Harrelson demanded that Blue go through IBEW's attorney before answering the MEOC's questions. Blue, however, was worried that the attorney would modify her answers, and so, on April 6, 2006, she mailed her responses directly to the MEOC and sent a copy to IBEW's lawyer. At that point, Harrelson began to discipline Blue for minor infractions. He accused her of being "excessively tardy" despite evidence that Blue was usually on time and never more than five minutes late. On February 14, 2007, the MEOC scheduled a public hearing on Phillips's case, and a few days later, IBEW took four disciplinary actions against Blue—all of which were eventually vacated by Harrelson's successor. Over the next several months, Harrelson's campaign of retaliation escalated: Blue received additional formal disciplinary measures, she was suspended without pay, and she was driven to take medical leave to escape the emotional stress wrought by her work environment. Blue finally filed her own complaint with the MEOC, alleging retaliation, and she later brought her case to the District Court for the Western District of Wisconsin.

Before trial, IBEW moved to exclude from evidence the MEOC's file on Phillips's complaint. The district court denied the motion, and four documents from the file were used at trial: Phillips's original complaint; Blue's statement; the MEOC's finding of probable cause; and the MEOC's notice of hearing. Blue used these documents, along with other evidence, to demonstrate that Harrelson had a motive to retaliate against Blue and to prove the causal link between her protected activities and her adverse employment actions. The jury credited her evidence and, on August 5, 2010, it returned a judgment in favor of Blue.

The district court formally entered judgment against IBEW on August 9, 2010. It originally set a deadline of August 25 for all post-trial motions, but, without any objection by Blue, the court extended this deadline in response to a motion by IBEW. On September 10, IBEW filed two motions, seeking either judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or a new trial under Federal Rule of Civil Procedure 59(a). The district court denied both motions on February 3, 2011, and on March 1, IBEW filed its Notice of Appeal.

## II

Before turning to the merits of IBEW's appeal, we must clarify the scope of our jurisdiction. We generally have jurisdiction to hear a case only where a notice of appeal was filed within 30 days of the entry of judgment. 28 U.S.C. § 2107(a); FED. R. APP. P. 4(a)(1)(A); *Bowles v. Russell*, 551 U.S. 205, 214 (2007). The timely filing of

certain post-trial motions, however, tolls the start of this 30-day period until the resolution of those motions. See FED. R. APP. P. 4(a)(4)(A). In this case, the district court entered judgment on August 9, 2010, but IBEW did not file its Notice of Appeal until March 1, 2011. This is obviously outside the 30-day period. The question is whether IBEW's filing of its post-trial motions (said to be under Rules 50(b) and 59(a)) operated to extend that time, given the fact that it filed its motions after the 28-day period provided in the rules for this purpose had elapsed. FED. R. CIV. P. 50(b), 59(b). This is a matter of jurisdictional importance. Our authority to hear IBEW's appeal from the underlying judgment turns on whether IBEW's motions tolled the time to appeal under Federal Rule of Appellate Procedure 4(a)(4)(A). We hold that they did not, and therefore our jurisdiction on appeal is limited to a review of the district court's denial of IBEW's post-judgment motions.

## A

The answer to whether IBEW's motions had the necessary tolling effect lies directly in the text of Federal Rule of Appellate Procedure 4(a)(4)(A). That rule states that only "timely" motions have tolling effect. FED. R. APP. P. 4(a)(4)(A). In order to be "timely," IBEW's motions had to be filed within the 28-day period provided in Federal Rules of Civil Procedure 50 and 59. The fact that the district court purported to extend the time past that 28-day period is of no moment. Civil Procedure Rule 6(b)(2) prohibits a court from doing exactly this.

Because these motions were untimely, they did not toll the period within which IBEW was entitled to file its appeal from the judgment. See *Browder v. Ill. Dep't of Corrections*, 434 U.S. 257, 264-65 (1978). In an attempt to avoid the apparent harshness of this result, IBEW suggests that we should follow the approach of the Sixth Circuit, which has said that "where a party forfeits an objection to the untimeliness of a Rule 59(e) motion, that forfeiture makes the motion 'timely' for the purpose of [Appellate] Rule 4(a)(4)(A)(iv)." *Nat'l Ecological Foundation v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). Because Blue failed to object to IBEW's late Rules 50 and 59 filings, IBEW argues that its motions should be considered "timely" on appeal. The Third Circuit sees things differently: It has concluded that untimely motions do not toll the period for filing a notice of appeal "even if the party opposing the motion did not object to the motion's untimeliness and the district court considered the motion on the merits." *Lizardo v. United States*, 619 F.3d 273, 278 (3d Cir. 2010). In our view, the Third Circuit has the better of the argument.

The Sixth Circuit's rule strikes us as uncomfortably close to the "unique circumstances" doctrine that the Supreme Court disapproved in *Bowles,* see 551 U.S. at 214, which is one good reason to reject it. *Lizardo*, which was handed down after *Bowles,* not surprisingly conforms to the Supreme Court's understanding of the nature of congressionally prescribed time limits for appeals. Section 2107(a) of Title 28 of the United States Code provides that a notice of appeal in civil cases must be filed within 30 days after the entry of judgment. As

the Supreme Court explained in *Bowles*, because only Congress can determine the jurisdiction of the lower federal courts, there is a "longstanding" tradition of treating such a statutorily mandated time limit for taking an appeal as jurisdictional. 551 U.S. at 210-11. The 30-day rule for civil appeals, (which has been incorporated into Federal Rule of Appellate Procedure 4(a)(1)(A)) thus limits the authority of the courts of appeals. Importantly, the statute addresses the subject of extensions of time, and it does not mention the kind of order entered here. Instead, it outlines a specific method by which a party may seek additional time to appeal by "showing . . . excusable neglect or good cause." 28 U.S.C. § 2107(c). This rule, too, is jurisdictional. See *Bowles*, 551 U.S. at 213 ("Because Congress specifically limited the amount of time by which a district court can extend the notice-of-appeal period in § 2107(c), that limitation is more than a simple 'claim-processing rule.' "). If we were to allow IBEW's untimely Rules 50 and 59 motions to toll the time to appeal, we would be creating a new opportunity for parties to extend the time to appeal. Such a rule would undermine the bounds on appellate jurisdiction established by Congress and contravene a "century's worth of precedent and practice" regarding the limitations on an appeal from one court to another. *Id.* at 209-10 & n.2.

This result is consistent with our usual treatment of untimely Rule 59 motions. We have long construed motions like IBEW's as motions for relief under Federal Rule of Civil Procedure 60. See, *e.g., Trepanier v. City of Blue Island*, 364 F. App'x 260, 263 (7th Cir. 2010); *Talano*

*v. Northwestern Med. Faculty Foundation, Inc.*, 273 F.3d 757, 762 (7th Cir. 2001); *United States v. Deutsch*, 981 F.2d 299, 300-01 (7th Cir. 1992); see also *Nat'l Ecological Foundation*, 496 F.3d at 481 (Sutton, J., concurring in the judgment) (suggesting the Sixth Circuit decide *Nat'l Ecological Foundation* by construing a late Rule 59 motion under Rule 60); *Rowe v. Ashdown,* 173 F.3d 846, 846 (2d Cir. 1999) (construing untimely Rule 50(b) motion as a Rule 60 motion). Even though the district court granted IBEW's motion to extend time to a date beyond the 28-day time limit and Blue made no objection to that extension, it is possible that Blue thought that IBEW was willing to forgo the advantages of using Rules 50 and 59 in exchange for the extra time available for a motion that, in substance, comes under Rule 60. (Note that Rule 4 makes it clear that a Rule 60 motion tolls the time for appeal only if it is filed no later than 28 days after judgment is entered. FED. R. APP. P. 4(a)(4)(A)(vi).) The way Appellate Rule 4 is structured, any motion that is not mentioned under subpart (4)(A) as something that will toll the time for appeal is automatically handled as a Rule 60 motion filed beyond the 28-day period. This approach "reduces the confusion often caused when movants haphazardly title and characterize motions asking that a judgment be re-opened," "makes decisions easier for both judge and litigant," and, as we explain below, "makes it easy for the Court of Appeals to be sure when it has jurisdiction over an appeal." *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1167 (7th Cir. 1995).

The relation between the deadlines under the Federal Rules of Civil Procedure and the Federal Rules of

Appellate Procedure is a close one: "Appellate Rule 4 integrates the time to appeal with a timely motion" under Rules 50 and 59. FED. R. CIV. P. 59, advisory committee's note, 2009 amendments. Treating untimely post-trial motions as Rule 60 motions, together with observing Rule 4's requirement that Rule 60 motions be filed within 28 days to toll the notice of appeal filing period, "enforce[s] the deadlines provided in the Federal Rules of Civil Procedure" and "'set[s] a definite point of time when litigation shall be at an end.'" *Lizardo*, 619 F.3d at 279 (quoting *Browder*, 434 U.S. at 264). Here, IBEW's motions were untimely, and so they did not toll the time it had to appeal from the underlying judgment. Its March 1, 2011, Notice of Appeal was, however, filed less than 30 days after the district court's February 3, 2011, ruling on those post-trial motions. We therefore have jurisdiction to review those orders.

B

This resolves our first jurisdictional problem, but there is a second one: whether the district court itself had the authority to rule on IBEW's post-trial motions. *Büchel-Ruegsegger v. Büchel*, 576 F.3d 451, 453 (7th Cir. 2009). So far, we have not had occasion to determine whether the time limits contained in Rules 50 and 59 are jurisdictional. See *Trepanier*, 364 F. App'x at 262 ("[W]e need not decide whether Rule 59(e) is a jurisdictional rule or a claims-processing rule because . . . defendants did not waive the protection of the rule."). In this case, however, Blue's failure to object to the untimeliness

of IBEW's motions requires us to determine whether those time limits impose jurisdictional limits on the authority of the district court, or whether they are simply claim-processing rules. We conclude that the 28-day limit on filing motions under Rules 50 and 59 are non-jurisdictional procedural rules designed to aid in the orderly transaction of judicial business.

As described above, time limits that have been passed by Congress and that clearly evince an intent to be jurisdictional, such as 28 U.S.C. § 2107(a), are jurisdictional. *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011). Because "*only* Congress may determine a lower federal court's subject-matter jurisdiction," however, it is improper for courts to refer to their own rules as "jurisdictional." *Bowles*, 551 U.S. at 211 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004)) (emphasis added). For example, the Supreme Court has ruled that Federal Rule of Bankruptcy Procedure 4004, which sets a deadline for a party to object to the discharge of debt, is not jurisdictional. *Kontrick*, 540 U.S. at 456.

Like Bankruptcy Rule 4004, the time limits contained in Federal Rules of Civil Procedure 50(b) and 59(b) are claim-processing rules. These rules were all promulgated by the Supreme Court under the Rules Enabling Act, 28 U.S.C. §§ 2071-2077, and therefore "do not create or withdraw federal jurisdiction." *Kontrick*, 540 U.S. at 453; see also *Lizardo*, 619 F.3d at 277. To be sure, the district court in this case violated Federal Rule of Civil Procedure 6 by extending IBEW's time to file its post-trial motions beyond 28 days. FED. R. CIV. P. 6(b)(2) ("A court

must not extend the time to act under Rules 50(b) and (d) . . . [and] 59(b), (d), and (e).”). But this error has no jurisdictional consequences, and the district court was within its discretion to consider the motion. The only consequence, which as we shall see is an important one, is that the scope of the court’s authority became constrained by Rule 60.

In summary, the district court had jurisdiction to hear IBEW’s untimely motions. Those motions, however, did not toll the time IBEW had to file its Notice of Appeal. Moreover, the grounds for relief were narrowed to those set forth in Rule 60. *Deutsch*, 981 F.2d at 301. We thus turn to the remaining issues on appeal, as it has now been limited.

### III

Although IBEW styled its motions as requests for relief under Rule 50 or 59, the window had closed on that possibility by the time it filed them and so it was necessarily pursuing relief under Rule 60. Of the various grounds spelled out in the latter rule, the only one that might apply to IBEW is Rule 60(b)(6), a catchall provision that permits a court to reopen a judgment “for any . . . reason justifying relief from the operation of the judgment.” FED. R. CIV. P. 60(b)(6). This “extraordinary remedy” is generally granted only in “exceptional circumstances.” *Bakery Machinery & Fabrication Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 849 (7th Cir. 2009). IBEW offers two arguments for why it meets that demanding standard: first, it says that the district court erred when it allowed Blue to present what it regards as cumulative

and prejudicial evidence; and second, it insists that there was insufficient evidence to support the jury's verdict. The district court denied relief on both grounds, and we review this decision for abuse of discretion. *Id.* at 848.

A

On the first ground, IBEW complains particularly about the district court's decision to admit parts of Phillips's MEOC file into evidence. Even in ordinary cases, where the party has properly preserved the point, evidentiary error warrants relief only if the district court abused its discretion. A party attempting to present this argument under Rule 60 has an even higher burden; it must somehow demonstrate that there is a significant probability of a substantial injustice. See *Shick v. Ill. Dep't of Human Svcs.*, 307 F.3d 605, 611 (7th Cir. 2002); see also FED. R. CIV. P. 61. IBEW has not hurdled this high bar, and we add for the sake of completeness that even under a less deferential standard we see no error here.

The district court was well within its discretion to allow Blue to present this evidence to the jury. The MEOC documents that IBEW wanted to exclude are not prejudicially cumulative simply because IBEW was willing to concede that Phillips filed an MEOC complaint and that Blue's responses corroborated Phillips's allegations. Within the limits of Federal Rule of Evidence 403, Blue was entitled to make her case with

the evidence of her own choosing. *Cf. United States v. Old Chief*, 519 U.S. 172, 186-89 (1997).

The MEOC documentation helps to illustrate the cause-and-effect relation between action on Phillips's complaint at the MEOC and the harsh retaliatory treatment endured by Blue. For example, the MEOC made an initial probable cause determination on Phillips's complaint on August 3, 2006. Four days later, Blue received a letter denying her overtime opportunities. She was entitled to present the probable cause determination to show, as she argued at trial, that the denial of overtime was "a reaction to her participation in that case." Similarly, a few days after IBEW learned of the MEOC's scheduled public hearing in Phillips's case, Blue was formally disciplined in several ways. In all, the documents from Phillips's MEOC file were relevant to Blue's allegation that IBEW's unfair treatment of her was a response to her participation in Phillips's complaint, and the district court did not abuse its discretion by finding that this evidence was more probative of this causal relationship than prejudicial to IBEW.

B

Next, IBEW argues that there was insufficient evidence to sustain the verdict. We do not agree, and even if we had some qualms, IBEW's argument is precluded by the scope of review under Rule 60. IBEW complains that Blue's only proof was her own testimony, but that is both untrue and irrelevant. Even if Blue's own testimony were her only evidence, it would

be enough to sustain the verdict. See *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Our account of the facts earlier suffices to demonstrate the case that the jury heard. Blue herself provided some of that information, and other witnesses corroborated her account. The jury also heard about the suspicious timing between Blue's participation in Phillips's case and the various adverse actions that Harrelson took. That timing supports an inference of retaliation. See *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). Altogether, the evidence is more than sufficient to support the jury's view that Blue's several adverse employment actions were the result of her participation in an MEOC investigation. By no stretch of the imagination was it so weak that there was a significant probability of a miscarriage of justice here.

IBEW has made other arguments as well, but none has any merit. The district court was well within its authority to deny IBEW's motions, and we therefore AFFIRM its post-judgment rulings.