In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 24-2696 & 24-2813

EAST GATE-LOGISTICS PARK CHICAGO, LLC, and NORTHPOINT DEVELOPMENT, LLC,

*Plaintiffs-Appellants, Cross-Appellees,*

*v.*

CENTERPOINT PROPERTIES TRUST; CENTERPOINT JOLIET TERMINAL RAILROAD, LLC; and HOUBOLT ROAD EXTENSION JV, LLC,

*Defendants-Appellees, Cross-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 24 C 3742 — **LaShonda A. Hunt**, *Judge.*

———————————

ARGUED FEBRUARY 10, 2025 — DECIDED JULY 21, 2025

———————————

Before EASTERBROOK, ROVNER, and LEE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This suit arises from competing development projects affecting terminals in Elwood and Joliet, Illinois (the "Joliet Intermodal Zone"). In December 2016 one of the developers, CenterPoint Properties Trust, entered a "Memorandum of Understanding" with the Illinois

Department of Transportation, Will County, and the City of Joliet. Under this contract CenterPoint Properties Trust would construct a bridge over the Des Plaines River, connecting the Joliet Intermodal Zone to nearby highways. In exchange CenterPoint Properties Trust would be allowed to collect a toll from those crossing the bridge. Section XII.B(3) of the contract provides that the County and City will "take no steps or actions to … eliminate trucking restrictions, weight limits, or other similar regulations on roads that enter or exit [portions of the Joliet Intermodal Zone]".

Around the same time NorthPoint Development, LLC (and, later, East Gate-Logistics Park Chicago, LLC) began work on a project for warehouse development. In December 2021 East Gate and Joliet executed their own deal, the "Annexation and Development Agreement." In it Joliet agreed to allow heavy tractor-trailers access to the Intermodal Zone along a road where trucks of such weight normally were prohibited. See Joliet Ordinance §19-21.

Believing that this would allow vehicles to bypass the toll bridge and so violate the Memorandum of Understanding, CenterPoint Properties Trust, CenterPoint Joliet Terminal Railroad, LLC, and Houbolt Road Extension JV, LLC (the "CenterPoint parties") sued Joliet in state court and named East Gate as an interested party. They asked the judge to enjoin the Annexation and Development Agreement. The Will County Court initially denied relief but, on remand from the Illinois Appellate Court, 2023 IL App (3d) 220433-U, enjoined those parts of the Annexation and Development Agreement that allow heavy truck access on the new roadway. See *Houbolt Road Extension JV, LLC v. City of Joliet*, No. 22 MR 138 (Will County Cir. Ct. March 19, 2024). Further briefing has

been ordered, and discovery is ongoing. The state court has yet to rule on the merits of the dispute. (The state judge called the decision a temporary restraining order, but it has lasted so long that it is effectively a preliminary injunction.)

Soon after the state court issued the preliminary injunction, East Gate and NorthPoint (the "East Gate parties") brought suit in federal court. They contend that the Memorandum of Understanding violates federal antitrust law by granting the CenterPoint parties the ability to prevent competitors from accessing warehouses in the Intermodal Zone. The CenterPoint parties raised three arguments in opposition. First they asserted that the district court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The antitrust case, they contended, functions as a federal appeal of the state court's injunction, which the *Rooker-Feldman* doctrine prevents. Second they argued that, even if jurisdiction exists, the district court ought to abstain under the *Colorado River* doctrine. See *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Third they asserted that, if the merits of the argument were to be reached, the *Noerr-Pennington* doctrine, which shields parties from antitrust liability for advocacy before government agencies, warrants a dismissal under Fed. R. Civ. P. 12(b)(6). See *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

The district court rejected the *Rooker-Feldman* argument and dismissed the 12(b)(6) motion without reaching the merits. But it stayed the federal proceedings, ostensibly on *Colorado River* grounds. 2024 U.S. Dist. LEXIS 171146 (N.D. Ill. Sept.

23, 2024). The East Gate parties appealed the stay order, while the CenterPoint parties cross-appealed the rejection of the *Rooker-Feldman* and *Noerr-Pennington* motions. In their initial briefing both parties asserted that we have appellate jurisdiction. After oral argument, we requested additional briefing on jurisdiction. The East Gate parties maintain that appellate jurisdiction exists, while the CenterPoint parties have reversed course, now asserting the opposite. We start and end our decision with appellate jurisdiction.

The parties agree that a stay of judicial proceedings is not normally appealable. It is not final under 28 U.S.C. §1291, and does not fit under the exceptions in 28 U.S.C. §1292. Yet the East Gate parties contend that we have jurisdiction because the district judge employed the language of *Colorado River*. *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), holds that a district court's decision to abstain under the *Colorado River* doctrine works like a dismissal in disguise, which makes it appealable as a final order under 28 U.S.C. §1291. Cf. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) (discussing circumstances under which stays of judicial proceedings are effectively final). See also, e.g., *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 645–46 (7th Cir. 2021); *R.C. Wegman Construction Co. v. Admiral Insurance Co.*, 687 F.3d 362, 364 (7th Cir. 2012).

The headwater of this stream of reasoning can be found in *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713 (1962), which first endorsed the "effectively out of court" approach in the abstention context. There the district court refused to empanel a three-judge court to assess the constitutionality of a state law, instead abstaining under the doctrine established in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).

*Moses H. Cone* and *Quackenbush* broadened this approach to additional abstention orders when the stay or dismissal places one "effectively out of *federal* court." *Moses H. Cone,* 460 U.S. at 9 n.8. The Court also limited this understanding of finality "to cases where … the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." *Id.* at 10 n.11. See also *Loughran,* 2 F.4th at 646; *Switzerland Cheese Association v. E. Horne's Market, Inc.*, 385 U.S. 23, 25 (1966) (finding an order denying a motion for summary judgment not appealable under 28 U.S.C. §1292(a)(1) because it was an order that "in no way touch[ed] on the merits" and "only relate[d] to pretrial procedures").

The collateral order doctrine also can provide appellate jurisdiction in abstention cases. See *Quackenbush,* 517 U.S. at 713–14; *Moses H. Cone,* 460 U.S. at 11–13. An interlocutory order is appealable under this doctrine if it "determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [would] be effectively unreviewable on appeal from a final judgment." *Moses H. Cone,* 460 U.S. at 11–12 (cleaned up); see also *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). Out of concern that judicial expansion of this exception would swallow the rule that appeal must wait until the district court's resolution of the whole case, however, the Court insists that the doctrine be used "narrow[ly] and selective[ly]". *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 113 (2009).

*Moses H. Cone* and *Quackenbush* provide examples of appealable abstention orders. In *Moses H. Cone* the suit dealt with the arbitrability of a contract, and the district court entered a stay to allow the state court to resolve that precise question. In *Quackenbush* the district court remanded, in its

entirety, a complex series of tort and contract claims in an insurance insolvency matter. The Supreme Court found that these litigants were placed "effectively out of [federal] court", because the district courts "surrender[ed] jurisdiction" of the matters to state courts. *Quackenbush*, 517 U.S. at 713–14; *Moses H. Cone*, 460 U.S. at 10.

By contrast, the order in this case does not put anyone "effectively out of [federal] court". Nor did the district court "surrender jurisdiction of a federal suit to a state court" in "all or an essential part of the federal suit". The federal antitrust claims fall within exclusive federal jurisdiction. 15 U.S.C. §§ 4, 15(a); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379–80 (1985). The state court will not resolve them. The district judge herself will do so once the state court has resolved the contract disputes. The East Gate parties have acknowledged throughout briefing that "the state action cannot resolve all Plaintiffs' Sherman Act claims" regardless of the outcome. If the state court finds that section XII.B(3) of the Memorandum of Understanding is enforceable under state law, "*none* of the Plaintiffs' [antitrust] claims will be resolved." If, on the other hand, the state court refuses to enforce section XII.B(3) or holds that it has not been violated, some of the East Gate parties' claims of *ongoing* antitrust violations might be affected but claims for damages would remain.

Whatever decision the state court reaches will not have a preclusive effect because antitrust questions are not at issue in state court. No matter what the state court decides about the effect of section XII.B(3), the entirety of the antitrust analysis remains for the federal court to handle. See also *Moses H. Cone*, 460 U.S. at 10 n.11 ("We do not hold that an order

becomes final merely because it may have the practical effect of allowing a state court to be the first to rule on a common issue."). Instead allowing the state court to go first will make the analysis of the federal issues more accurate, for the district court would know what parts of the Memorandum of Understanding are enforceable. This makes it hard to say that the district court "surrender[ed] jurisdiction". It also sufficiently distinguishes the facts here from *Loughran*, 2 F.4th at 646, where we found that a *Colorado River* abstention order was appealable even though some "residual" matters might come back to the federal court. Here we can confidently say that the remaining questions the district court will engage with would not be "residual" but rather the core of the dispute.

The collateral order doctrine likewise does not provide jurisdiction. *Cohen* requires that the interlocutory order "resolve an important issue". The only matter resolved is one of timing—whether the district court will wait for the state court to resolve a question of state law. Appeal therefore must wait until the federal antitrust issue has been finally resolved. See also *Mohawk*, 558 U.S. at 107 ("the chance that the litigation at hand might be speeded … does not provide a basis for jurisdiction") (cleaned up); *Grace v. Vannoy*, 826 F.3d 813 (5th Cir. 2016).

The district court's reference to *Colorado River* was unfortunate (perhaps spurred by the fact that both parties invoked that case). *Colorado River* arose from parallel state and federal litigation about water rights. The United States asked a federal court to issue a declaratory judgment about its water rights. The district court abstained in favor of a comprehensive water-management proceeding under way in state court. The Justices held that abstention can be appropriate in such a

zero-sum game, for conflicting decrees about disposition of the same water would be untenable. Only the state court could resolve the rights of all parties—and in allocating water, as in other kinds of *in rem* proceedings, the ability to bind all parties is essential. The Court drew parallels to historical practices in property cases where the first court to exercise jurisdiction over the property at issue maintains jurisdiction to the exclusion of other courts. This result avoids duplicative litigation over a limited resource. *Colorado River*, 424 U.S. at 818. And that is also why a genuine *Colorado River* order is appealable, as it effectively ends the federal case.

The dispute between the East Gate and CenterPoint parties does not entail a zero-sum game. The district court's stay is just a step in case management. The judge believed that it would be helpful to know how state law handles a state-law issue that affects the antitrust claim. While the parties might prefer a different sequence of decision, an order affecting litigation's timing is not appealable under §1291. See also *Crotty v. City of Chicago Heights*, 857 F.2d 1170 (7th Cir. 1988). Consequently, we lack appellate jurisdiction over the appeal.

*R.C. Wegman* supports our understanding. There the district judge orally granted a stay in an insurance dispute because a state court suit involving the same insurance claim (but a different defendant) was ongoing. The federal judge likely hoped that resolution of state law issues would smooth the path in the federal case. This court dismissed the immediate appeal for lack of jurisdiction, finding the stay to be simply a matter of timing, not a dismissal disguised as a stay. 687 F.3d at 365. Accord *Doctor's Associates, Inc. v. Duree*, 375 F.3d 618, 622 (7th Cir. 2004) (finding that a district court's dismissal order that was based in part on waiting for state court resolution

of a related matter functions like a stay and was not appealable).

The fact that the judge's stay cited *Colorado River* does not matter to jurisdiction. Cases such as *Quackenbush* tell us that jurisdiction depends on what the order *does* and not what name the district judge applied. Because, as we have emphasized, the federal antitrust issues will be decided in federal court no matter what happens in state court, nothing has been finally resolved and an appeal is premature. See also *Crotty*, 857 F.2d at 1174.

The parties do not explain how the cross-appeal might grant us jurisdiction. We nonetheless address the question ourselves. See *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009); *Villa v. Barr*, 924 F.3d 370, 372 (7th Cir. 2019). The *Rooker-Feldman* and *Noerr-Pennington* motions were 12(b)(1) and 12(b)(6) motions to dismiss. Interlocutory orders, including denials of motions to dismiss, are not ordinarily appealable under 28 U.S.C. §1291. See *Dupree v. Younger*, 598 U.S. 729, 733–34 (2023); *Beathard v. Lyons*, 129 F.4th 1027, 1032 (7th Cir. 2025). We do not see any reason to depart from that norm, given that all arguments can be reviewed on appeal after a final decision (if they still matter by then).

The appeals are dismissed for want of jurisdiction.