In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3530

DANIEL LOUGHRAN and MARGARET LOUGHRAN,

*Plaintiffs-Appellants*,

*v.*

WELLS FARGO BANK, N.A., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 C 4023 — **Virginia M. Kendall**, *Judge*.

ARGUED NOVEMBER 30, 2020 — DECIDED JUNE 22, 2021

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges*.

WOOD, *Circuit Judge*. Daniel and Margaret Loughran defaulted on their home mortgage in 2011. In the ensuing foreclosure litigation, the Loughrans have not contested that they are in default. Instead, they have pursued a series of procedural delay tactics, as a result of which they remain in possession of their home despite not having made a mortgage payment in nine years.

This case concerns one of the Loughrans' many maneuvers. In January 2019, after their state-court foreclosure litigation was already over seven years old, the Loughrans accused U.S. Bank and its counsel of committing fraud in the course of those proceedings. In May 2019, sensing that their fraud claim was going nowhere, the Loughrans tried their luck in federal court, with a complaint that copied and pasted large swaths of text from their state-court filings. Citing the doctrine first announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and noting the practical identity between the federal and state actions, the district court stayed the federal proceedings. The Loughrans have appealed that decision, which we now affirm.

**I**

This saga began in 2005, when plaintiffs Daniel and Margaret Loughran took out a $395,380 home-mortgage loan from defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo securitized the mortgage by transferring it to a New York common-law trust (the "Trust"). The Pooling and Servicing Agreement ("PSA") that governs the Trust appointed U.S. Bank as Trustee and Wells Fargo as Servicer. In its capacity as Servicer, Wells Fargo is responsible for receiving and processing loan payments and "initat[ing] or caus[ing] to be initiated" foreclosure proceedings if a loan goes into default. The PSA also designates Wells Fargo as the Custodian of the Trust. In this capacity, Wells Fargo keeps physical possession of the original notes and mortgages on the Trustee's behalf.

As we noted, the Loughrans defaulted on their mortgage in 2011. In December of that year, U.S. Bank, in its capacity as Trustee, initiated a foreclosure proceeding against the

Loughrans in the Circuit Court of Grundy County, Illinois. Acting as Servicer, Wells Fargo retained counsel to pursue the foreclosure proceedings on U.S. Bank's behalf.

During the first two years after the suit was filed, the Loughrans attempted to obtain a Home Affordable Modification Program (HAMP) loan modification through Wells Fargo.[1] Only in 2014, when it appeared that a modification was not forthcoming, did the Loughrans file an answer, affirmative defenses, and counterclaim in the foreclosure action. In these pleadings, the Loughrans alleged (among other things) that U.S. Bank lacked standing to file the foreclosure action and that Wells Fargo had violated Treasury Department guidelines by not (yet) offering the Loughrans a HAMP modification. In March 2015, explaining that certain provisions in the Trust PSA prevented it from modifying the loan, Wells Fargo formally denied the Loughrans' request for a HAMP modification.

In October 2015, U.S. Bank moved to strike and dismiss the Loughrans' affirmative defenses and counterclaim. It defended its standing to sue on the ground that, as Trustee, it was the "holder" of the Loughrans' note by virtue of its transfer to the Trust. U.S. Bank also argued that Wells Fargo, as Servicer, did not have any obligation to follow HAMP Treasury Guidelines that were inconsistent with the Trust PSA. The

---

[1] HAMP is a program administered by Fannie Mae, under which "financially struggling homeowners avoid foreclosure by modifying loans to a level that is affordable … and sustainable … ." See *Overview*, HOME AFFORDABLE MODIFICATION PROGRAM, https://www.hmpadmin.com/portal/programs/hamp.jsp.

Loughrans did not oppose U.S. Bank's motion, and so their affirmative defenses and counterclaim were stricken.

U.S. Bank followed up with a motion for summary judgment. That triggered a two-year fight over the Loughrans' right to obtain a copy of the Trust PSA and to view their original note. Eventually the Loughrans obtained a copy of the PSA, which (they say) revealed to them for the first time that Wells Fargo—not U.S. Bank—was in physical possession of the original note (albeit on U.S. Bank's behalf and in its capacity as Servicer). Materials turned over in discovery also alerted the Loughrans for the first time that Wells Fargo had hired U.S. Bank's counsel in the foreclosure proceeding (again, in its capacity as Servicer).

Though the terms of the Trust PSA explained Wells Fargo's involvement on both counts, the Loughrans seized on this new information as proof of misconduct. In June 2018, they filed a third-party complaint against Wells Fargo, in which they alleged that Wells Fargo had intentionally misrepresented which entity possessed the Loughrans' note in the course of denying their HAMP modification. (As we understand it, the Loughrans' theory was that restrictions in the Trust PSA would have bound Wells Fargo only if the Trust physically possessed the note. Because Wells Fargo held the note, nothing in their view prevented a HAMP modification.) Around this time, the Loughrans also filed a petition to remove the judge presiding over the foreclosure action for cause under 735 ILCS 5/2-1001(a)(3). The judge denied that motion, after which the Loughrans voluntarily dismissed their third-party complaint against Wells Fargo.

In January 2019, U.S. Bank filed another motion for judgment of foreclosure. In response, the Loughrans raised three

new affirmative defenses: (1) U.S. Bank lacked standing to bring the foreclosure action because it did not have physical possession of the note; (2) the foreclosure complaint was null and void because Wells Fargo had brought it in U.S. Bank's name but without U.S. Bank's authorization; and (3) U.S. Bank, Wells Fargo, and their lawyers had perpetrated a fraud on the state court by representing that U.S. Bank was in possession of the note.

U.S. Bank moved to strike the affirmative defenses. On June 14, 2019, while that motion was pending, the Loughrans filed the federal action now before us. The new complaint named as defendants Wells Fargo; its parent company; and the three law firms that had represented U.S. Bank and Wells Fargo in the foreclosure proceeding—Pierce & Associates, P.C.; McCalla Raymer Liebert Pierce, LLC; and Mayer Brown LLP (the "Law Firm Defendants"). (Unless the context requires otherwise, we refer to the defendants collectively as Wells Fargo.) The Loughrans did not include U.S. Bank as a defendant. The allegations of fraud and misrepresentations in the federal complaint mirror the Loughrans' affirmative defenses in state court. In fact, substantial portions of the federal complaint are copied verbatim from the Loughrans' filings in the state foreclosure action. The federal complaint seeks damages under ten different legal theories, including the Fair Debt Collection Practices Act (FDCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), the Illinois Consumer Fraud and Deceptive Business Practices Act, common-law fraud, conspiracy to commit fraud, and intentional infliction of emotional distress.

Wells Fargo responded to the federal complaint by moving to stay the action pending the outcome of the state

foreclosure proceedings. It also moved to dismiss the complaint under Rule 12(b)(6), arguing that the Loughrans failed to state a claim for fraud because the complaint and relevant documents show that under Illinois law, U.S. Bank was the legal holder of the Loughrans' note by virtue of the transfer of the note to the Trust and Wells Fargo's physical possession of the note as Trust Custodian.

The district court granted Wells Fargo's motion to stay. Given this decision, it did not rule on the Rule 12(b)(6) motion. The Loughrans appealed. Following the district court's stay order, U.S. Bank withdrew its motion to strike the Loughrans' affirmative defenses in the state foreclosure proceeding. The Loughrans then withdrew Affirmative Defenses 2 and 3.

## II

Before turning to the merits, we need to say a few words about appellate jurisdiction. When the district court invoked the *Colorado River* doctrine, it stayed, rather than dismissed, the federal action. Ordinarily a stay of district-court proceedings is not immediately appealable because it is not a "final decision[]" for purposes of 28 U.S.C. § 1291, and it does not fall within any statute or rule permitting interlocutory appeals. The Supreme Court has recognized, however, that certain stay orders should be treated as final for purposes of appeal if the practical effect is equivalent to a dismissal.

In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), the Court held that a stay of federal litigation pending the resolution of a state suit was final for the purposes of section 1291 where the federal and state actions "involved [an] identical issue" and that issue was "the only substantive issue present in the federal suit." *Id.* at 10

(internal quotation omitted). The Court observed that because "the state court's judgment on the issue would be res judicata," the stay of federal proceedings pending the resolution of the state suit "meant that there would be no further litigation in the federal forum." *Id.* As a result, the Court reasoned, the stay order was final in the sense that it put the plaintiff "effectively out of court." *Id.*

A stay may be appropriate where issues are "substantially the same," not just "identical." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2017). The critical question is "whether the state case is likely to dispose of" the claims in federal court. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). We have the necessary substantial similarity here. It is true that, unlike in *Moses Cone*, the state-court action here may not resolve everything. The problem is asymmetry. If the state court decides that U.S. Bank is the legal holder of the Loughrans' note, and thus had standing to litigate the foreclosure action, then the Loughrans' federal action will largely go away. But if the state court decides the issue in the Loughrans' favor, then the fraud claims that they have raised in federal court may not be completely resolved. But that is a common pattern.

We do not read *Moses Cone* as establishing rigid criteria for stay orders. In fact, the opinion signals that the contrary is true. As support for its jurisdictional analysis, the *Moses Cone* Court drew heavily from *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713 (1962), a case that involved a stay of federal-court proceedings under the abstention doctrine announced in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941). In *Idlewild* the Court held that the district court's stay order was final and appealable because a *Pullman* stay

puts the appellant "effectively out of court." 370 U.S. at 715 n.2. In this context, "effectively out of court" does not necessarily mean permanently out of court. That is because, as the Court noted in *Moses Cone*, a "stay pursuant to *Pullman* abstention" (such as the one in *Idlewild*) "is entered *with the expectation that the federal litigation will resume* in the event that the plaintiff does not obtain relief in state court on state-law grounds." *Moses Cone*, 460 U.S. at 10 (emphasis added).

Thus, under *Idlewild* and *Moses Cone*, appellate jurisdiction over stay orders is not limited to situations in which the state court will finally decide the federal court claims with preclusive effect, as was the case in *Moses Cone*. Rather, jurisdiction under section 1291 extends to cases in which there remains some chance that the case will return to federal court to dispose of residual issues. The key question for jurisdictional purposes is whether the "object of the stay order is to require all *or an essential part* of the federal suit to be litigated in a state forum." *Moses Cone*, 460 U.S. at 10–11 n.11 (emphasis added). Since the stay order in the present case was entered with the expectation that the state litigation would "largely" resolve the federal litigation, that test is met.

This is enough to resolve the jurisdictional question. We have no need to reach the question whether the collateral-order doctrine would also support appellate jurisdiction. See *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Although the Supreme Court reaffirmed *Cohen* in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106 (2009), it also cautioned that the *Cohen* theory should be used sparingly. *Id.* at 106–07. What matters for our case is that, without any help from *Cohen*, our appellate jurisdiction is secure. We are now ready to

consider whether the district court properly stayed its proceedings.

## III

We begin with the acknowledgement that federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. It follows that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813.

Nonetheless, in a limited number of circumstances federal courts may decline to hear cases that otherwise fall within their jurisdiction. The Supreme Court recognized one such situation in *Colorado River*, in which it held that a court may dismiss a federal suit in favor of a concurrent state-court action if "exceptional circumstances" merit abstention and deference to the state-court action would promote "wise judicial administration." *Id.* at 813, 818. Indeed, the authority to coordinate mirror-image cases is one that courts have long enjoyed. We assess the present stay under the *Colorado River* rubric because that is where the Supreme Court discussed these issues most directly, and that is how the parties presented their case.

We have used a two-step inquiry in our assessment of whether *Colorado River* abstention is appropriate. First, we ask "whether the concurrent state and federal actions are … parallel." *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020) (quoting *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989)). If not, then we do not have mirror-image cases. If so, we consider "whether the necessary exceptional circumstances exist to support a stay or dismissal." *DePuy*, 953 F.3d at 477. A variety of considerations can

inform this inquiry. See *Colorado River*, 424 U.S. at 818–20. Courts have developed a checklist of ten common ones:

1. Whether the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property;

2. The inconvenience of the federal forum;

3. The desirability of consolidating litigation in one place—that is, the value in avoiding "piecemeal" litigation;

4. The order in which jurisdiction was obtained in the concurrent fora;

5. The source of governing law—federal or state;

6. The adequacy of the state court action to protect the federal plaintiffs' rights;

7. The relative progress of the state and federal proceedings;

8. The presence or absence of concurrent jurisdiction;

9. The availability of removal; and

10. Whether the federal action is vexatious or contrived.

*DePuy*, 953 F.3d at 477; see also *Lumen Constr. Corp. v. Brant Const. Co.*, 780 F.2d 691, 694–95 (7th Cir. 1985). This list, we emphasize, is primarily useful as a heuristic aid: it is designed to be helpful, not a straitjacket. Different considerations may be more pertinent to some cases, and one or more of these factors will be irrelevant in other cases. A district court is free to "tak[e] into account a special characteristic of the case before it" in assessing whether the circumstances meriting abstention are "exceptional." *DePuy*, 953 F.3d at 477.

We evaluate a district court's determination that state and federal proceedings are parallel *de novo*, and we review its overall decision to abstain for abuse of discretion. See *Freed*, 756 F.3d at 1019, 1021; see also *DePuy*, 953 F.3d at 477.

A

Turning to the first step of the inquiry, we agree with the district court that the Loughrans' federal suit and the state foreclosure action are parallel. It is not necessary for concurrent suits to be "formally symmetrical." *Freed*, 756 F.3d at 1019. It is enough if the state and federal suits involve "substantially the same parties … contemporaneously litigating substantially the same issues." *Huon*, 657 F.3d at 646 (internal quotation omitted). At bottom, the "critical question" is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (internal quotation omitted).

The Loughrans contend that the cases are not parallel because U.S. Bank is not a defendant in the federal suit, and Wells Fargo and the Law Firm Defendants are not plaintiffs in the state foreclosure action. That much is true, but it alone is not dispositive. We have held that "the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants," *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004), or by removing key parties for "no legitimate reason," *Freed*, 756 F.3d at 1020. The parties in the two suits need only be substantially the same. *Id.* What matters is whether the interests of the parties are "nearly identical." *Clark*, 376 F.3d at 686. Put another way, the question is whether the addition of new parties with different interests alters the central issues in the

concurrent case, thereby undermining the "overall similarity of the disputes." *Id.*

Here, Wells Fargo and the Law Firm Defendants are defendants in the federal action solely by virtue of their involvement in the state foreclosure case. As for U.S. Bank's absence from the federal suit, there is no doubt that the Loughrans *could* have named the bank as a defendant but "actively chose to exclude" it. *Freed*, 756 F.3d at 1020.

The parties' interests in the two suits also align: the federal defendants are being sued for actions that they took on U.S. Bank's behalf with respect to the sole issue that U.S. Bank is litigating in the state court—its possession of the Loughran's note. The parties in both cases thus have similar incentives and goals. That is enough to make the parties in the two suits functionally the same.

The federal and state litigation also involve parallel issues. The Loughrans' main contention in both suits is that U.S. Bank lacked standing to pursue the foreclosure action because Wells Fargo, not U.S. Bank, had physical possession of the Loughrans' note. The Loughrans further allege that U.S. Bank, Wells Fargo, and their lawyers perpetrated a fraud against the Loughrans and the state court when they repeatedly asserted that U.S. Bank was the "note holder." (They never explain why Wells Fargo, U.S. Bank, and the Law Firm Defendants would be motivated to commit such a fraud, particularly when the Loughrans' default is not in dispute, but for present purposes we do not need to explore this anomaly.)

Our earlier summary of the proceedings leaves no doubt that the Loughrans raised nearly identical allegations of fraud against Wells Fargo, U.S. Bank, and their lawyers throughout

the state proceedings. Trying to avoid the obvious compari-sons, the Loughrans argue that we may not consider the allegations of fraud that they made in their affirmative defenses in the foreclosure action because they dismissed Affirmative Defense 3 (the fraud defense) shortly after the district court issued its stay order in the federal case. We have our doubts, however, that a party may circumvent, after the fact, a federal-court stay by dismissing without prejudice parallel aspects of the concurrent state case. We need not decide that issue, though, because the two suits remain parallel even if we limit our analysis to the Loughrans' sole remaining affirmative de-fense (*i.e.*, that U.S. Bank lacked standing).

Although the federal complaint invokes several different theories, the allegation at the heart of each of them is the same: that U.S. Bank was not the legal possessor of the note; Wells Fargo, U.S. Bank, and their lawyers knew this; and yet they falsely represented that it was. This is the precise issue before the state court; in the course of adjudicating the Loughrans' standing defense, the foreclosure court will necessarily and conclusively determine whether U.S. Bank was the "holder" of the Loughrans' note as a matter of Illinois law. The remain-der of the Loughrans' claims depend on the answer to their standing argument; if it fails, so will everything else.

The Loughrans insist that this must be wrong, because the pleadings in the state and federal suits invoke different rights and remedies (that is to say, different theories in support of a single claim). The Loughrans point out that they are seeking to vindicate federal and state statutory rights in federal court, whereas they are asserting only affirmative defenses in state court.

This argument is fundamentally mistaken. In *Clark*, we explained that the parallel nature of concurrent cases cannot "be dispelled by repackaging the same issue under different causes of action." 376 F.3d at 687. Whether the rights and remedies differ in the two suits is beside the point: the key inquiry is not whether the alignment of the claims and remedies in the two cases is the same, but rather whether "the central legal issues[] remain the same in both cases." *Id.* They are.

One further objection, which the Loughrans do not squarely raise but is implicit in their arguments, arises from the fact noted earlier that the preclusive effect of the state court's standing determination is one-sided. If the state court determines that U.S. Bank is the legal holder of the Loughrans' note, then a foundational building block of all the Loughrans' federal-court claims will disappear. If, on the other hand, the state court determines that U.S. Bank is *not* the legal holder of the Loughrans' note, then there may be more work for the federal court to do to resolve their claim.

As we said earlier, this one-sidedness is neither unusual nor fatal to a finding that the two cases are parallel. We confronted a similar situation in *Freed*. There, the plaintiff in concurrent state and federal actions raised claims in the federal court that would have been fully resolved if the state court ruled one way, but only partially addressed if the state court ruled in the other direction. See *Freed*, 756 F.3d at 1021. Nevertheless, we held that the state and federal actions were parallel. We found that the federal- and state-court claims were interdependent, and we reasoned that because "[a] resolution in state court of [the predicate] issues … [wa]s necessary before" the federal case could be decided, "it was rational for the district court to determine that the state court litigation will

be an adequate vehicle for the complete and prompt resolution of the larger dispute." *Id.* (internal quotation omitted); see also *Lumen*, 780 F.2d at 696 (finding that deference to state-court proceedings was appropriate where "a decision on [federal-court] claims [could] not be had until [an] underlying … dispute[,] … [fully] presented only in the state court proceeding and … governed by state law," was resolved). We find the same to be true of the Loughrans' dispute here.

B

Since the state and federal actions are parallel, we next consider whether the district court abused its discretion in reaching its decision to abstain. *DePuy*, 953 F.3d at 480. The bottom line is no: district courts have discretion to stay proceedings in federal suits that substantially duplicate litigation that was well underway in state court when the federal case was filed. Because it may be helpful to the parties and the district court, we explain why this conclusion is also consistent with *Colorado River*. We do so with a quick look at the traditional points courts have consulted.

The district court determined that *Colorado River* factors 1, 3, 4, 6, 7, and 10 favored abstention—factors 1, 4, 7, and 10 heavily so. It thought that factors 2 and 9 pointed against abstention, and that factors 5 and 8 were neutral. We largely agree with that assessment, as we now explain.

1. The first inquiry is whether the state court has assumed jurisdiction over the property at issue. It is relevant only if there is property at issue in *both* the federal and the state proceedings, but that is not the case here. While the state foreclosure action concerns property rights, the Loughrans' federal suit concerns fraud and

misconduct. This consideration is thus largely beside the point.

2. The convenience (or lack thereof) of the federal forum does not support abstention. The state and federal courts here are in close geographical proximity to one another and equally convenient.

3. The interest in avoiding piecemeal litigation supports the stay. As the district court noted, the state action will likely "dispose of a majority of the factual and legal issues presented in this case" and so a stay would save judicial resources.

4. The order in which the two courts obtained jurisdiction strongly favors the stay. The state foreclosure action began in 2011, and the Loughrans raised allegations of standing and fraud at various points between 2014 and January 2019. The Loughrans did not file their federal action until May 2019. Enough said.

5. The source of the governing law neither favors nor disfavors abstention, because the federal action involves both federal- and state-law claims.

6. We next ask whether the federal rights of the plaintiffs will be adequately protected. As the district court noted, because it stayed rather than dismissed the action, the Loughrans in principle could revive their federal case in the event that certain issues survived the resolution of the foreclosure action. See *Freed*, 756 F.3d at 1023. This is so even though the Loughrans may suffer from a self-inflicted wound stemming from their voluntary dismissal with prejudice of their state complaint against Wells Fargo. The dismissal may affect

the state court's ability to address that claim, but the Loughrans have no one but themselves to thank for that. See *Lumen*, 780 F.2d at 696.

7. The relative progress of the two proceedings also supports the stay. At the time of the district court's order, the state-court proceedings were well advanced, while the federal action had not progressed beyond the motion-to-dismiss stage.

8. The presence or absence of concurrent jurisdiction does not push the needle either way.

9. Next we look at the availability of removal. The district court thought that this weighed against abstention because the Loughrans, Illinois citizens being sued in Illinois, could not have removed the foreclosure action to federal court. See 28 U.S.C. § 1441(b)(2). That much is true, but the conclusion is wrong. The unavailability of removal *favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute. See *Freed*, 756 F.3d at 1023.

10. Finally, there is the vexatious or contrived nature of the federal claims. This too favors the stay. Recall that the Loughrans tried to have the judge in their state foreclosure proceeding removed for cause. Only after the judge denied that motion did the Loughrans file the federal action. Their complaint frankly reports their dissatisfaction with the state-court proceedings; it asserts that the state proceedings are unfair and the state judge "does not have the time or resources to adequately apprise himself of the specifics of the foreclosure case." Other actions also signaled forum-

shopping. The district court was entitled to infer from the Loughrans' litigation strategy to date that the federal suit is another in a long line of delay tactics meant to buy time before foreclosure.

Looking more broadly at the stay, it is plain that the Loughrans have been engaged in what we have called "reactive litigation." *Lumen*, 780 F.2d at 693 (cleaned up). These suits, "filed by one who is a defendant in a prior proceeding based upon the same factual controversy," are usually "motivated by a desire to delay the progress" of the initial proceeding; "to impose travel burdens on one's adversary; to take advantage of procedural opportunities only available in one forum; to obtain the supposed advantages of being a plaintiff; to avoid perceived prejudice in the initial forum; or to benefit perceived prejudice in the second forum." *Id.* at 693–94.

The Loughrans respond only that they have not yet suffered any adverse rulings in the foreclosure action, and so they cannot be accused of forum shopping. But a court's determination that a litigant is motivated by forum shopping does not require a formal adverse ruling.

In sum, the district court did not abuse its discretion in staying the proceedings before it, in deference to the ongoing state-court litigation. At its core, the Loughrans' federal suit accuses the parties involved in their foreclosure action of engaging in misconduct during state-court proceedings. Put bluntly, they are asking the federal judiciary to monitor and discipline how parties conduct themselves in state court. This is a task that extends beyond our role. See *Harold v. Steel*, 773 F.3d 884, 885–87 (7th Cir. 2014); *cf. D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923). If there has been an abuse of process or

misconduct in state court—and we see no evidence of either—the proper place to turn is the state court itself, which possesses the authority to order sanctions or other penalties as appropriate. That the state court in this case declined to order sanctions is not a reason for the federal judiciary to intervene.

## IV

In addition to contesting the district court's *Colorado River* analysis, the Loughrans raise an argument in the alternative. Even if we think abstention appropriate, they say, we should reverse and order a remand because the district court erroneously denied the Loughrans leave to amend their complaint.

We see no such error. This was a matter within the district court's discretion. The Loughrans asked to amend only in a single sentence at the close of their response to the defendants' motion to stay or dismiss. That sentence furnished none of the necessary details, such as how the amended complaint would be different or which defects it would cure. See *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019). Under these circumstances, the district court's denial was not an abuse of discretion.

## V

This leaves one final matter for us to address. In its opening brief, Wells Fargo informed us that the Loughrans had filed for Chapter 13 bankruptcy shortly after the district court issued its stay order. The bankruptcy petition had the effect of automatically staying the state foreclosure proceedings. See 11 U.S.C. § 362(a). A few days before oral argument, Wells Fargo informed us that the Loughrans' bankruptcy case had

been dismissed and the automatic stay lifted. See FED. R. APP. P. 28(j).

The Loughrans responded with a motion for sanctions and motion to strike Wells Fargo's letter on the ground that it was an inappropriate use of Rule 28(j). That rule, the Loughrans contend, is for citations to legal authority only, not for informing the court about developments in related litigation. The Loughrans also accused Wells Fargo of raising the bankruptcy dismissal to "unduly prejudice" them and "mislead and improperly influence the Court just days before oral argument."

The Loughrans are making a mountain out of a molehill: any citation error Wells Fargo may have committed was harmless. See FED. R. CIV. P. 61. Once formal briefing in an appeal has concluded, parties are not prohibited from informing the court of important developments in related court proceedings (about which we may take judicial notice), so long as those developments have "a direct relation to the matters at issue." *United States v. Hope*, 906 F.2d 254, 260–61 n.1 (7th Cir. 1990) (internal quotation omitted). Here, because the bankruptcy petition's automatic stay of the state foreclosure action might have affected our analysis, Wells Fargo's letter was not improper.

The judgment of the district court is AFFIRMED, and the Loughrans' motion to strike and motion for sanctions are DENIED.