In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1678

PAMELA J. ANTOSH and NED E. LASHLEY,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF MOUNT PLEASANT, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:22-cv-00117-BHL — **Brett H. Ludwig**, *Judge*.

_____

ARGUED JANUARY 8, 2024 — DECIDED APRIL 25, 2024

_____

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges*.

WOOD, *Circuit Judge*. Before us is another chapter in Pamela Antosh and Ned Lashley's litigation challenging the Village of Mount Pleasant's use of its eminent-domain power to acquire their property. They first filed suit in state court in 2019, soon after the Village condemned their property for road improvements associated with the private Foxconn development. In state court, Antosh and Lashley opted to contest only the amount of compensation they were owed, not

the propriety of the taking. But when the state court ruled against them on an evidentiary issue two years into litigation, they decided to try their luck in federal court. In their federal complaint, they alleged for the first time that the taking was improper because it served a private purpose, not a public one.

The district court saw this federal suit as a strategic effort to circumvent an unfavorable state-court ruling without taking the necessary steps to appeal. Accordingly, it dismissed the action without prejudice, citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Antosh and Lashley now appeal that judgment. We conclude that the district court was right to refrain from exercising jurisdiction over their federal claims, and so we affirm.

**I**

The Village of Mount Pleasant gained national notoriety as an economic hub in late 2017, when Taiwanese electronics company Foxconn announced a plan to open its first major American factory there. The Village lured the manufacturing giant to the area in part by promising to acquire more than 2,800 acres of privately owned land for the new development. In September 2017, the state of Wisconsin helped the Village live up to its word: the legislature authorized the creation of Tax Incremental Financing District Number 5 ("TIF No. 5"), allowing the Village to finance expenses associated with the Foxconn development. Consistent with TIF requirements under state law, the Village rezoned properties within TIF No. 5 from "agricultural" to "business park." See Wis. Stat. § 66.1105.

The Village also needed to make substantial improvements to the transportation infrastructure in the area to facilitate public access to the Foxconn development. One of these efforts included expanding and improving both County Highway KR and 90th Street. To do that, the Village determined that it was necessary to re-route 90th Street through part of a three-acre parcel owned by Antosh and Lashley. The parcel was located within TIF No. 5 on the corner of the two roads.

In 2019, the Village followed the steps required under state law to condemn a large portion of Antosh and Lashley's property. See Wis. Stat. § 32.05. On June 3, 2019, the Village sent Antosh and Lashley an appraisal letter explaining that the "proposed municipal improvement project" would involve the improvement of various roadways "to allow for the construction of an industrial development that is commonly known as the Foxconn development." The Village later filed a relocation order stating that the condemnation of the property was necessary for the highway improvement project. On September 19, 2019, the Village issued a jurisdictional offer to purchase their property. That document identifies "[h]ighway or other transportation related purposes" as the "public purpose" of the taking. And finally, on November 20, 2019, the Village recorded an award of damages, thereby transferring the property interests to the Village. See Wis. Stat. § 32.05(7).

Under Wisconsin law, Antosh and Lashley had two options for challenging the taking: a "compensation" action and a "right-to-take" action. An owner who wishes to contest "the amount of just compensation to be paid" by the condemnor must file a compensation action within two years from the date of the taking. Wis. Stat. § 32.05(11). On the other hand, an

owner who wishes to contest a taking "for any reason other than that the amount of compensation offered is inadequate" must file a right-to-take action within 40 days of receiving the jurisdictional offer. See Wis. Stat. § 32.05(5) (stating that an owner who fails to meet that deadline "shall be barred from raising any such objection in any other manner").

Antosh and Lashley did not file a right-to-take action. (They received the Village's jurisdictional offer on September 19, 2019, and so their 40-day window lapsed on October 29, 2019.) They did, however, file a compensation action in Racine County Circuit Court on December 4, 2019, seeking greater compensation for the taking. They contended that the Village had paid other property owners in the Foxconn area five to eight times more than it had offered them. After two years of state-court proceedings, the case was set to proceed to trial on February 1, 2022.

That schedule was interrupted when a key evidentiary dispute emerged in advance of trial. Antosh and Lashley hired an expert appraiser who produced two valuations of their property. One valued the land as "agricultural" property; the other, higher appraisal, valued the land as "business park" property (reflecting the 2017 zoning changes). In response, the Village filed a motion *in limine*, seeking to exclude any evidence relating to the "business park" valuation. The Village urged that this evidence was barred by Wisconsin's Project Influence Rule, which provides that changes in property value "caused by the public improvement for which such property is acquired" may not be considered in determining just compensation. Wis. Stat. § 32.09(5)(b). The Village argued that the "public improvement" for which the property was taken included the Foxconn development (not just the

highway improvements), and so the property had to be assessed as "agricultural."

At a final pre-trial conference on January 5, 2022, the state court granted the Village's motion *in limine*. For purposes of the Project Influence Rule, the court concluded, the "public improvement" involved "all of the public infrastructure, including requiring zoning modifications implemented to better support the [Foxconn] development."

On January 28, 2022, four days before trial was to start, Antosh and Lashley filed this suit in the Eastern District of Wisconsin against the Village under 42 U.S.C. § 1983. For the first time, they alleged that the Village condemned their land for a private purpose in violation of the Fifth Amendment. They also alleged equal protection and substantive due process violations under the Fourteenth Amendment.

The state court held a hearing three days later to discuss the impact of the federal suit on the state case. Antosh and Lashley asked the state court to adjourn the proceedings. That court expressed serious concerns about their litigation tactics. It saw the federal suit as an attempt to have a federal court "take a look at" its ruling on the Village's motion *in limine*, "essentially circumventing" appellate review by the state courts. At the same time, the court recognized that a favorable ruling in federal court would render the state case "a nullity." Although it was "not happy" that the federal complaint "looks like an end run of [its] decision," the state court agreed to stay the trial pending resolution of the federal suit.

The Village later filed a motion to dismiss the federal complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). It asked the district court to abstain from exercising its

jurisdiction over the proceeding, and in the alternative, to dismiss the case on the merits. Characterizing the federal suit as "utter gamesmanship" showing "tremendous disrespect for the state court system," the district court elected to dismiss the federal claims, though it did so without prejudice to their renewal. Antosh and Lashley now appeal that judgment, arguing that the district court's decision to abstain was an abuse of discretion.

## II

Although abstention "is the exception, not the rule," *Colorado River*, 424 U.S. at 813, under established abstention doctrines, "a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *SKS & Associates, Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). These doctrines "are not rigid," however. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 525 (7th Cir. 2021). The unifying feature of the Supreme Court's abstention cases is that "they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

Under the doctrine recognized in *Colorado River*, a federal court may defer to a concurrent state court case in exceptional circumstances where abstention would promote "wise judicial administration." 424 U.S. at 818. Several prudential principles animate this doctrine, including "the interest in conserving judicial resources, the desirability of avoiding duplicative litigation and the risk of conflicting rulings, and the benefits of promoting a comprehensive disposition of the

parties' dispute in a single judicial forum." *Driftless*, 16 F.4th at 526. We use a two-step inquiry to assess whether *Colorado River* abstention is appropriate. First, we ask "whether the federal and state actions are … parallel." *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020). If so, we ask "whether the necessary exceptional circumstances exist to support a stay or dismissal." *Id.*

We review a district court's determination that state and federal proceedings are parallel *de novo*, but we review its overall decision to abstain for abuse of discretion. *Loughran v. Wells Fargo Bank*, 2 F.4th 640, 647 (7th Cir. 2021).

A

Two suits need not be mirror images to be considered parallel. Rather, concurrent actions are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *DePuy*, 953 F.3d at 477 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). The "critical question" is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011).

Antosh and Lashley's state and federal actions bear obvious similarities. For one, the two suits involve the same operative facts. Both arise from the Village's exercise of its eminent-domain power to condemn their property. And, although in the federal suit Antosh and Lashley named two additional defendants (the Village's development authority and the Village's president), the parties are otherwise identical. The relevant inquiry is "whether the addition of new parties with different interests alters the central issues in the

concurrent case." *Loughran*, 2 F.4th at 648. Here, the incentives and goals of the new defendants in the federal action align with those of the Village, and that suffices to make the parties in the two suits "functionally the same." *Id.*

That said, the federal and state litigation present different issues. In state court, Antosh and Lashley spent two years contesting the amount of compensation owed for the taking. In federal court, they urge that the taking has been illegitimate all along, because the Village seized their property for a private use under the guise of a public one. So the two suits are not perfectly symmetrical: regardless of how the dust settles in state court, their public-use takings claim in federal court will go unanswered.

This lopsidedness, however, is not fatal to a finding that the actions are parallel. The fact that the federal and state suits involve different issues is entirely a product of Antosh and Lashley's own litigation choices. They could have raised a public-use claim years ago—either in state court, by filing a right-to-take action, see Wis. Stat. § 32.05(5), or in federal court, see *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) (holding that plaintiffs need not exhaust state court remedies before challenging a taking in federal court). Antosh and Lashley chose neither of these paths. Instead, they spent two years in state court seeking only to recover more money for their property. That they now, with the benefit of hindsight, regret their earlier litigation decisions is not a valid basis for granting them a chance to start over on their takings claim in federal court.

Moreover, we have never demanded an exact fit between the federal and state cases, no matter the theory of abstention. See, *e.g.*, *Courthouse News Service v. Brown*, 908 F.3d 1063, 1071

(7th Cir. 2018) (basing its decision to abstain "on the more general principles of federalism" even though the case was "not a perfect fit" with any of the abstention doctrines), *cert. denied*, *Courthouse News Service v. Brown*, 140 S. Ct. 384 (2019) (mem.); see also *J.B.*, 997 F.3d at 723 (same). "Instead, the abstention inquiry is flexible and requires a practical judgment informed by principles of comity, federalism, and sound judicial administration." *Driftless*, 16 F.4th at 527.

Federalism concerns loom large here. The timing of the federal suit is telling. For two years, as state court proceedings moved along, Antosh and Lashley were satisfied to contest only the amount of compensation owed. They were ready to proceed to trial on that issue. Only after the state court issued a ruling that limited the compensation they could recover did they decide to file their federal complaint. As the state court observed, what Antosh and Lashley "obviously" want is for a federal court to "take a look at" its ruling. At bottom, they seek to circumvent the Wisconsin appellate court—the proper tribunal in which they may challenge the state court's ruling. Their litigation tactics signal "a lack of respect for the state's ability to resolve [the issues] properly before its courts." *SKS & Associates*, 619 F.3d at 679. We would be endorsing those tactics were we to allow this federal suit to proceed.

Although Antosh and Lashley insist that they are not forum shopping, the record belies this assertion. They contend that for two years the Village concealed the fact that the road improvements that necessitated the taking were intended to facilitate the private Foxconn development, and so they discovered that they had an actionable public-use takings claim only when the Village filed its motion *in limine* in 2021. As the saying goes, that dog won't hunt. Given the extensive local

and national media coverage that the 2,800-acre Foxconn de-velopment received, it is hard to believe that Antosh and Lashley failed to connect the dots between the road improve-ments and Foxconn. And not surprisingly, the record con-firms this common-sense insight. Back in June 2019, the Vil-lage sent Antosh and Lashley an appraisal letter notifying them that the "roadways are being improved to allow for the construction of *an industrial development* that is *commonly known as the Foxconn development*" (emphasis added). And, as the district court noted, Antosh and Lashley "spent two years arguing in state court that they should be entitled to greater compensation similar to other property owners whose land was condemned *for the purpose of the Foxconn development*" (emphasis in original).

Antosh and Lashley also point out that they have pleaded due process and equal protection claims in federal court, but for similar reasons, this does not help them. Their substantive due process claim alleges that the taking was an arbitrary abuse of power. This theory relies on a premise that, as we have just explained, the record contradicts—that the Village blindsided them about the relation between the road im-provements and Foxconn. Meanwhile, their equal protection theory is that the Village paid their "similarly situated neigh-bors" five to eight times more than it offered them. Yet recall that Antosh and Lashley advanced this exact argument in the state-court compensation action. We repeatedly have held that the parallel nature of the concurrent cases cannot be "dis-pelled by repacking the same issue under different causes of action." See, *e.g.*, *Clark*, 376 F.3d at 687.

Taken together, it is evident that this case is just a strategic attempt to bypass an unfavorable state-court ruling two years

into that litigation. That Antosh and Lashley's own litigation decisions have created a mismatch between the federal and state actions is not enough to destroy the parallel nature of the actions here, where exercising federal jurisdiction would offend fundamental principles of federalism. We thus agree with the district court that the two actions are parallel for the purposes of *Colorado River* abstention.

B

Keeping in mind the federalism concerns we outlined earlier, we next consider the district court's determination that exceptional circumstances justify its decision to dismiss without prejudice. A variety of factors can inform this inquiry. They are spelled out in *Loughran*, 2 F.4th at 647. This list, we have stressed, is "designed to be helpful, not a straitjacket. Different considerations may be more pertinent to some cases, and one or more of these factors will be irrelevant in other cases." *Id.* We address only the more useful points here.

Several factors counsel in favor of abstention. Both the federal and state suits are about rights in the same real property, over which the Village assumed jurisdiction more than four years ago. Indeed, the Village already has built a road across it. The desirability of avoiding piecemeal litigation over the Village's use of its eminent domain power to acquire the property also supports abstention. "Multi-jurisdictional legal challenges involving the same subject matter are costly, disruptive, and run the risk of conflicting rulings." *Driftless*, 16 F.4th at 527. Judicial economy concerns run deep also: the state court has devoted two years of judicial time and resources to resolving Antosh and Lashley's compensation action. The timing of the two actions favors deferring to the state courts. Antosh and Lashley filed the state suit in December 2019 and

were just four days away from the start of trial when they filed the federal suit in January 2021. They have provided no good reason for us to interfere with the state court's extensive handling of the first-filed, pending case.

Finally, the vexatious or contrived nature of the federal claims strongly favors abstention. We already have explained why that is so, but we repeat: only after Antosh and Lashley lost an evidentiary ruling in state court did they file their federal complaint. Further evincing the contrived nature of the federal action is their uncredible assertion that they did not know until 2021 that the road improvements made on their property were associated with the Foxconn development. The district court was entitled to infer from Antosh and Lashley's litigation strategy that this federal suit is "utter gamesmanship"—"little more than a tardy, tactical effort to get a 'do-over' on their takings challenge to avoid a ruling they do not like without taking the necessary steps to appeal."

We see no need for an exhaustive survey of the remaining factors. Even if we were to assume that they do not support abstention, there is more than enough here to demonstrate that the district court did not abuse its discretion. And the remaining factors (inconvenience of the federal forum, source of governing law, concurrent jurisdiction, possibility of removal, and the adequacy of the state-court action to protect the federal rights of the plaintiffs) do not decisively support anyone. We understand that, pursuant to Wisconsin law, it is probably too late for Antosh and Lashley to bring a public-use takings claim in state court. See Wis. Stat. § 32.05(5). But they have only themselves to blame for that. Since "state courts are co-equal partners when it comes to protecting federal rights[,]" it is enough to know that Antosh and Lashley could

have sought to vindicate their federal rights in Wisconsin courts. *DePuy*, 953 F.3d at 479; see also *DeVillier v. Texas*, No. 22-913, 2024 WL 1624576 (U.S. Apr. 16, 2024) (availability of an action under state law provides adequate vehicle for claims under the Takings Clause).

What matters most in the end is that the district court acted well within its discretion when it concluded that allowing this federal suit to proceed would run contrary to fundamental principles of equity, comity, and federalism. The need to safeguard these principles readily supports deference to the state courts in this case.

The judgment of the district court is AFFIRMED.