In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1251

SOLOMON A. JONES,

*Plaintiff-Appellant,*

*v.*

KANKAKEE COUNTY SHERIFF'S DEPARTMENT, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for
the Central District of Illinois.
No. 2:23-cv-02253-CSB-EIL — **Colin S. Bruce,** *Judge.*

SUBMITTED DECEMBER 22, 2025* — DECIDED JANUARY 21, 2026

Before BRENNAN, *Chief Judge,* and SCUDDER and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Solomon Jones is representing himself in a civil rights action he filed in federal court in Illinois. The issues presented by his appeal are straightforward

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

and lead us without difficulty to return the case to the district court to account for a recent development in state court litigation relevant to Jones's federal claims. What is less straightforward is what to make of legal representations in the reply brief Jones filed on appeal. Though he tells us he did not use artificial intelligence to prepare the brief, we are skeptical, as his brief attributed quotations to two cases that do not appear in those cases. Our skepticism leads us not to sanction Jones, but instead to offer some observations on considerations unique to the use of AI by *pro se* litigants.

**I**

Jones filed a sprawling lawsuit in November 2023, invoking 42 U.S.C. § 1983 and alleging that several municipal and county entities in Kankakee, Illinois violated his constitutional rights. The bulk of Jones's allegations arose from a series of 2023 incidents in which local authorities ticketed and arrested him for trespassing and disorderly conduct.

After initiating the lawsuit, Jones peppered the district court with motions, including one seeking the district judge's recusal. In February 2025, the district court denied the recusal motion and, on its own initiative, determined that it must abstain from adjudicating Jones's claims under *Younger v. Harris*, 401 U.S. 37 (1971). The court explained that one of the criminal matters referenced in Jones's complaint remained pending in Illinois state court. From there the court concluded that proceeding further in this litigation may interfere with the pending state court proceeding because Jones's complaint involved constitutional issues that might be litigated in the state criminal case. So the district court stayed the case and directed Jones to file a status report once the state criminal proceeding had concluded.

Jones appeals, focusing primarily on the district court's denial of his recusal motion. But we lack jurisdiction to consider that decision because the district court has not entered a final judgment in this case. The jurisdiction Congress gave us in 28 U.S.C. § 1291 extends only to final decisions—those resolving all claims against all parties. *Grunt Style LLC v. TWD, LLC*, 140 F.4th 839, 844 (7th Cir. 2025). Although on occasion we have reviewed the denial of a motion to recuse before final judgment through a writ of mandamus, see *e.g.*, *In re Gibson*, 950 F.3d 919, 923 (7th Cir. 2019), we will not treat Jones's appeal as such a petition because it fails to meet the requirements of Federal Rule of Appellate Procedure 21(a), see *United States v. Henderson*, 915 F.3d 1127, 1132 (7th Cir. 2019).

The district court's decision to abstain under *Younger* and stay the case, on the other hand, is appealable now because it requires "an essential part of the federal suit to be litigated in a state forum." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646 (7th Cir. 2021) (citation omitted). Jones primarily contests the manner of his arrest and the charges of trespassing and disorderly conduct, which the state court may consider during his criminal trial.

While this appeal was pending, Jones informed the district court that the pertinent state court proceeding had concluded. Indeed, he reported that the proceeding ended with his being acquitted of the charges.

This intervening development eliminates our need to resolve whether the district court's decision to abstain under *Younger* was appropriate. See *Sykes v. Cook County Cir. Ct. Prob. Div.*, 837 F.3d 736, 740–41 (7th Cir. 2016). The proper approach in these circumstances is to vacate the district court's

order staying the case and to return the case for further pro-
ceedings.

One final point. Beyond reporting his recent acquittal,
Jones also told the district court that he now faces a new set
of charges in state court for disorderly conduct and aggra-
vated assault of a transit employee. See *Illinois v. Jones*, No. 25-
CM-215 (Kankakee County Cir. Ct. May 7, 2025). Although
these charges came over a year after the initiation of this ac-
tion, Jones says they demonstrate ongoing harassment. We
leave it to the district court to assess the relevance, if any, of
this new set of state criminal charges, including whether the
development warrants renewed consideration of *Younger* ab-
stention or allowing Jones to file an amended complaint.

## II

We close with a few words on non-existent quotations
Jones attributed to cases he relied on in his appellate brief. To
our eye, the error has all the hallmarks of a so-called AI "hal-
lucination," a circumstance where an AI large language
model generates an output that is fictional, inaccurate, or non-
sensical. News accounts over the last few years leave no doubt
that the consequences of AI hallucinations can be very serious
and worrisome. Equally clear is the enormous investment of
human and financial capital to enhance the accuracy of AI
generally and LLM output.

While AI presents great overall promise, the experience so
far in litigation has revealed instances of inaccurate factual
and legal representations to courts. How to respond both in
individual cases and at the broader level of court rules and
policies is a challenge fully upon the judiciary, federal and
state. Where all of this lands for *pro se* litigants—parties who

represent themselves and who do so almost always without any legal training—is an important component of the ongoing dialogue and one implicated by our reaction to the quotation errors in Jones's brief.

In response to a show cause order, Jones insists that he did not use AI to prepare his brief and, even more, that "[m]isattributed quotations and incorrect citations happen all of the time." At one level, Jones's observation is fair, for we often see inaccurate legal representations from *pro se* litigants. And most of the time, absent an indication of knowledge of falsity or an intent to mislead, we move past the misstatements and resolve the appeals, mindful that *pro se* litigants almost always lack legal training. Approximately 60% of our caseload in recent years includes at least one party appearing *pro se*. We have learned how to resolve those cases with the care all litigants deserve without getting bogged down in unwitting misstatements or untidy filings. In our experience, *pro se* litigants do their best with the resources available to them.

At another level, however, we doubt Jones's representation and continue to believe he used a generative AI application to prepare his brief. His brief is meticulous in its presentation—very cleanly and professionally formatted, employing prose and citation formats we rarely see from *pro se* litigants, and, above all else, attributing non-existent quotations to real cases falling within the area of law implicated by the issues Jones presents on appeal.

Whether we are right or Jones is right need not detain us, for we have no reason to believe his misstatements of law were knowing or intentional. Nor do we have any reason to believe he has the training necessary or resources available to check the accuracy of legal citations. In the circumstances

before us, then, and mindful that before today's decision we have not supplied any guidance on the use of AI by *pro se* litigants, we stop short of imposing any form of sanction on Jones.

A few broader observations seem warranted, though. AI presents great promise for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively. Many important initiatives are underway on this front, for AI has many different uses, within and well beyond litigation. Different areas of law and the requirements and challenges they present differ in their suitability to benefit from the use of AI. On the litigation front, we have little doubt that litigants and courts alike will arrive over time at sound and workable practices, policies, and rules that account for these realities and the nuanced consideration they deserve.

As *pro se* litigants employ AI to assist with court filings, a basic reminder seems wise. Accuracy and honesty matter. Indeed, the submission of a legal filing constitutes a representation to a court and, as the Federal Rules of Civil Procedure put the point, both attorneys and unrepresented parties are certifying "that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support" and the "legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2), (3); see also Fed. R. App. P. 38. Right to it, all litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal.

No doubt the inquiry is different for *pro se* and represented parties. Indeed, our reaction to what we saw in Jones's brief may have been quite different if the non-existent quotations came in a brief submitted by a lawyer—an officer of the court with professional responsibilities and the training necessary to avoid such a misrepresentation. But *pro se* litigants shoulder responsibility too and, while our understanding of honest mistakes and common presentational foot faults will remain, in no way will we allow a court filing to include misrepresentations on legal or factual points that an unrepresented party reasonably knows or should know exist. For today, then, suffice it to say nothing about the many efficiencies and promises offered by AI eliminates the peril that may well accompany a serious abdication of the care the law demands of even unrepresented parties.

With these observations, we VACATE the district court's order and REMAND for further proceedings.